

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| AMERICAN ELECTRIC POWER SERVICE CORPORATION, SOUTHWESTERN ELECTRIC POWER COMPANY, PUBLIC SERVICE COMPANY OF OKLAHOMA, OKLAHOMA GAS & ELECTRIC COMPANY, XCEL ENERGY SERVICES INC., and SOUTHWESTERN PUBLIC SERVICE COMPANY ) ) ) ) ) ) ) ) ) ) | Case No. 23-1378 |
| *Petitioners,* ) | |
| v. ) | |
| FEDERAL ENERGY REGULATORY COMMISSION, ) ) ) | |
| *Respondent.* ) | |

## PETITION FOR REVIEW

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), and Rule 15(a) of the Federal Rules of Appellate Procedure, American Electric Power Service Corporation, on behalf of its affiliates Southwestern Electric Power Company and Public Service Company of Oklahoma (collectively, "AEP"); Oklahoma Gas & Electric Company ("OG&E"); and Xcel Energy Services Inc. ("Xcel Energy Services"), on behalf of Southwestern Public Service Company (together with AEP and OG&E, the "Petitioners") respectfully petition this Court

for review of the following orders of the Federal Energy Regulatory Commission ("FERC" or "Commission"):

- *Southwest Power Pool, Inc.*, FERC Docket No. ER22-1846-001, 181 FERC ¶ 61,076 (October 28, 2022) ("October 28 Order"); and

- *Southwest Power Pool, Inc.*, Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket No. ER22-1846-003, 181 FERC ¶ 62,211 (December 29, 2022) ("December 29 Order").

Copies of the October 28 and December 29 Orders are attached to this Petition as Attachments A and B, respectively.

These FERC Orders address Southwest Power Pool, Inc.'s ("SPP") allocation of costs associated with high voltage electric transmission facilities in the multi-state region for which it acts as the Regional Transmission Operator. Petitioners are transmission-owning members in SPP and filed a timely request for rehearing of the October 28 Order on November 28, 2022, which was deemed denied by operation of law on December 28, 2022, under 16 U.S.C. § 825*l*(a).[*]

---

[*] Request for Rehearing of Southwestern Electric Power Company, Public Service Company of Oklahoma, Southwestern Public Service Company, and Oklahoma Gas & Electric Company, Docket No. ER22-1846-001 (November 28, 2022) (*available at* https://elibrary.ferc.gov/eLibrary/filelist?accession_number=20221128-5062&optimized=false).

2

This petition for review is timely filed within 60 days of the December 28 denial in accordance with 16 U.S.C. § 825*l*(b). This Court has subject matter jurisdiction, and venue is proper, under 16 U.S.C. § 825*l*(b) because SPP and Xcel Energy Services have their principal place of businesses in this circuit. Also attached to this Petition are: (1) the Corporate Disclosure Statements required by Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1A; and (2) a Certificate of Service, with the list of parties to the underlying proceedings.

3

Dated: February 24, 2023

Respectfully Submitted,

*/s/ Charlotte H. Taylor*
Charlotte H. Taylor
James C. Beh
Brooke M. Proto
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
(202) 879-3939
ctaylor@jonesday.com
jcbeh@jonesday.com
bmproto@jonesday.com

Dominic D. Williams
Senior Attorney
OGE ENERGY CORP.
P.O. Box 321
321 N. Harvey Ave.
Oklahoma City, OK 73102
(405) 553-3729
williado@oge.com

*Counsel for Oklahoma Gas & Electric Co.*

*/s/ Misha Tseytlin*
Misha Tseytlin
Kevin M. LeRoy
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(608) 999-1240
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

Christopher R. Jones
Mary-Kate Rigney
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street, NW, Suite 1000
Washington, DC 20004
(202) 662-2181
chris.jones@troutman.com
mary-kate.rigney@troutman.com

*Counsel for American Electric Power Service Corporation, on behalf of Southwestern Electric Power Company and Public Service Company of Oklahoma, and Xcel Energy Services Inc., on behalf of Southwestern Public Service Company*

*(Additional counsel on following page.)*

4

Jessica Cano
Senior Counsel
AMERICAN ELECTRIC POWER SERVICE
CORPORATION
1 Riverside Plaza
Columbus, OH 43215
(614) 401-9150
jacano@aep.com

Timothy T. Mastrogiacomo
Lead Assistant General Counsel
Xcel Energy Services Inc.
701 Pennsylvania Avenue NW Ste. 250
Washington, DC 20006
(202) 661-4481
tim.t.mastrogiacomo@xcelenergy.com

*Counsel for American Electric Power
Service Corporation, on behalf of
Southwestern Electric Power Company
and Public Service Company of
Oklahoma, and Xcel Energy Services
Inc., on behalf of Southwestern Public
Service Company*

5

**ATTACHMENT A**

181 FERC ¶ 61,076
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Richard Glick, Chairman;
James P. Danly, Allison Clements,
Mark C. Christie, and Willie L. Phillips.

| | |
|---|---|
| Southwest Power Pool, Inc. | Docket No.  ER22-1846-001 |

### ORDER ACCEPTING TARIFF REVISIONS SUBJECT TO CONDITION

(Issued October 28, 2022)

1.      On May 10, 2022, pursuant to section 205 of the Federal Power Act (FPA)[1] and section 35.13 of the Commission's regulations,[2] Southwest Power Pool, Inc. (SPP) submitted proposed revisions to Attachment J (Recovery of Costs Associated with New Facilities) of its Open Access Transmission Tariff (Tariff) to establish a process through which, on a case-by-case basis, all of the costs of a transmission facility with a voltage level between 100 kV and 300 kV (Byway facility) can be allocated on a regional, postage-stamp basis.  As discussed below, we accept SPP's proposed Tariff revisions, subject to condition, effective August 1, 2022, as requested, and direct SPP to submit a compliance filing within 30 days of the date of this order.

## I.      **Background**

2.      In 2010, the Commission accepted SPP's proposal to implement its Highway/Byway cost allocation method (Highway/Byway),[3] under which SPP allocates the costs of transmission facilities on a voltage threshold basis.[4]  For transmission facilities at 300 kV or above (Highway facilities), SPP allocates 100% of costs on a

---

[1] 16 U.S.C. § 824d.

[2] 18 C.F.R. § 35.13 (2021).

[3] *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 (2010) (Highway/Byway Order), *reh'g denied*, 137 FERC ¶ 61,075 (2011).

[4] Generally, Highway/Byway cost allocation applies to new transmission facilities included in and constructed pursuant to SPP's Transmission Expansion Plan to ensure the reliability of SPP's transmission system, certain other qualifying network upgrades, and high priority upgrades.  SPP, Tariff, attach. J, § III. (12.1.0) § III.A.2.

regional, postage-stamp basis. For Byway facilities, SPP allocates 33% of costs on a regional, postage-stamp basis and 67% of costs to the SPP pricing zone in which the facilities are located. For transmission facilities at or below 100 kV, SPP allocates costs 100% to the zone in which the facilities are located.[5]

3.      In its order accepting the Highway/Byway cost allocation method, the Commission also accepted SPP's revisions to its unintended consequences review process, which is now known as the Regional Cost Allocation Review (RCAR) process.[6] The RCAR process requires review of the Highway/Byway cost allocation method and allocation factors at least every six years. During the RCAR process, SPP will determine cost allocation impacts in each SPP pricing zone. Any changes to the regional cost allocation method must be filed with the Commission.[7]

4.      In 2021, SPP filed a proposal to establish a process through which entities could petition the SPP Board of Directors (SPP Board) to approve, on a case-by-case basis: (1) the prospective reallocation of the costs of certain existing Byway facilities; or (2) the full allocation of the costs of new Byway facilities so that they would be allocated as Highway facilities (i.e., 100% regionally). The Commission rejected SPP's proposal, finding that it would grant the SPP Board too much discretion in allocating the costs of Byway facilities without clear standards for how its cost allocation decisions would be made.[8] The Commission stated that the proposed Tariff language did not contain objective standards, criteria, or thresholds for the SPP Board's decision, and that without clear criteria, the SPP Board would have "too much discretion to make decisions with significant cost and rate implications, without assurance that the cost allocation decisions will result in rates that are just and reasonable and not unduly discriminatory or preferential."[9] Additionally, the Commission found that the proposal lacked transparency because the Tariff provisions did not indicate that SPP would document and provide an explanation about how the SPP Board would evaluate applicants' information and reach

---

[5] *Id.* § III.A.2.i. For network upgrades associated with designated resources that are wind generation resources where the upgrade is located in a different zone than the point of delivery, the costs of facilities 300 kV and above are allocated 100% to the region and the costs of facilities below 300 kV are allocated 67% to the region and 33% to the transmission customer. *Id.* §§ III.A.3, III.A.4.

[6] Highway/Byway Order, 131 FERC ¶ 61,252 at P 83.

[7] SPP, Tariff, attach. J, § III.D.

[8] *Sw. Power Pool, Inc.*, 175 FERC ¶ 61,198, at PP 38-39 (2021) (Rejection Order).

[9] *Id.* P 39.

conclusions about whether to approve a request.[10]  The Commission also distinguished the proposal from SPP's Transformer Waiver Process, finding that the number of facilities and amount of costs eligible for waivers under the proposal would be notably more expansive.[11]

## II.     SPP Filing

5.       On May 10, 2022, SPP submitted proposed revisions to its Tariff to establish a process through which, on a case-by-case basis, the costs of Byway facilities can be fully allocated to the SPP region, with a requested effective date of August 1, 2022.[12]  In support of its proposed Tariff revisions, SPP states that, in recent years, there has been a significant increase in wind generation throughout the SPP region.  SPP points out that the total registered wind nameplate capacity at the end of 2020 was 27,326 MW, an increase of 22% from 2019, and that at the end of 2020, 89% of all nameplate wind capacity was dispatchable.  SPP explains that wind generation output increased by 11% in 2020 to just over 82,000 GWh produced and that wind resources comprise about 29% of the installed capacity in the SPP market.[13]

6.       SPP explains that, unlike traditional generation sources (i.e., gas or coal), renewable generation in SPP is generally not located close to the load it serves, but rather is remotely located where wind energy resources are abundant.  SPP claims that the increase of renewable generation in the region has resulted in some SPP pricing zones, specifically the Oklahoma Gas and Electric Company (OG&E), Midwest Energy, Inc. (Midwest Energy), and Sunflower Electric Power Corporation (Sunflower) pricing zones, having nameplate wind generation capacity in excess of 200% of the peak demand for load inside the zone.  SPP explains that this discrepancy in capacity versus demand in these zones contributes to increased loading on both Highway and Byway facilities inside these zones.[14]

7.       SPP argues that zones with an abundance of wind generation in comparison to demand can result in misalignment between the costs of transmission assets versus the benefits received from those transmission assets.  For example, SPP explains that in 2011, Sunflower's pricing zone had 550 MW of wind capacity with a 12-coincident peak

---

[10] *Id.* P 40.

[11] *Id.* P 41.

[12] SPP Transmittal at 1.

[13] *Id.* at 9-10.

[14] *Id.* at 10-11.

(CP) load of 900 MW, and in 2021, Sunflower had 3,100 MW of wind capacity with still only a 12-CP load of 900 MW.  SPP asserts that along with the increase in wind generation in Sunflower's pricing zone since 2011, the zone has also seen an increase in Schedule 11 (Base Plan Zonal Charge and Region Wide Charge) costs from the Byway facilities being built.  SPP states that because 67% of the Byway facilities' cost is allocated to the local zone, load in Sunflower's pricing zone is in some cases paying 67% of the cost for Byway facilities primarily used for exporting wind generation to other zones rather than primarily supporting local load.  SPP contends that in such cases allocating 67% of the cost of an upgrade to the local zone may not be roughly commensurate with the benefits received and thus it may be more appropriate that the costs of such upgrades be allocated regionally.[15]

8.     To address these concerns, SPP proposes to establish a cost allocation waiver process for Byway facilities, where an entity may submit a request for the costs of a specific Byway facility to be regionally allocated.  If the SPP Board approves a requested cost allocation waiver, a Byway facility's costs would be allocated prospectively 100% to the SPP region.[16]

9.     SPP's proposed Tariff revisions specify that to be eligible for 100% regional, postage-stamp cost allocation under the proposed cost allocation waiver process, an entity must submit a written request for waiver to SPP, along with supporting information and analysis, and must satisfy a Capacity Criterion, Flow Criterion, and Benefit Criterion.  To meet the Capacity Criterion, an applicant must show that the total nameplate capacity of generating resources that are physically connected in the zone where the Byway facility is located (and that are not affiliated with load in that zone) exceeds 100% of the prior calendar year's average 12-CP resident load used in calculating the base plan zonal load ratio share for the zone.[17]  To meet the Flow Criterion, an applicant must show that the energy flow on each Byway facility that is attributed to generating resources physically connected in the zone where the Byway facility is located and that are not affiliated with load in that zone exceeds 70% of the sum of flows on the Byway facility attributed to: (1) generating resources affiliated with the load in the zone where the Byway facility is located; and (2) generating resources that are physically connected in the zone and not affiliated with load in the zone.[18]  Lastly, to meet the Benefit Criterion, an applicant must

---

[15] *Id.* at 11-12 & fig. 3.

[16] SPP's Regional State Committee approved both the initial proposal in Docket No. ER21-1676-000 and the revised proposal in the instant filing.  *See* SPP Transmittal at 4-6.

[17] Proposed SPP, Tariff, attach. J, § III. (13.1.0) § III.E.2.a.

[18] Proposed SPP, Tariff, attach. J, § III.E.2.b.

show that the Byway facility for which it is requesting 100% regional, postage-stamp cost allocation provides benefits to load outside the pricing zone where the Byway facility is located. Benefits may be quantified in terms of adjusted production cost savings or savings through the Integrated Marketplace. Sufficient benefit to load outside the pricing zone is demonstrated if the benefit exceeds either: (1) 50% of the Byway facility's projected total benefit to load in the SPP region; or (2) the portion of the Byway facility's annual revenue requirement projected to be borne by load outside the Byway facility's zone under 100% regional, postage-stamp cost allocation.[19]

10.    Entities may submit a request for waiver of the Highway/Byway cost allocation method for a Byway facility within 180 days after SPP issues the Byway facility's notice to construct or, for existing Byway facilities, within 180 days after August 1, 2022, the requested effective date of the proposed Tariff revisions.[20] Upon receipt of the requesting entity's application for the cost allocation waiver, SPP will post a copy of the application on its website. Within 90 days of receiving a request, SPP will provide a written recommendation and rationale regarding the approval or denial of the cost allocation waiver request to SPP's Cost Allocation Working Group, Regional State Committee, Members Committee, and the SPP Board. Within 30 days of SPP's written recommendation, any interested party may submit comments to the Cost Allocation Working Group, Regional State Committee, Members Committee, and the SPP Board. At least 30 days after the comment deadline, the Cost Allocation Working Group will vote to recommend approval or denial of the cost allocation waiver request at its next monthly meeting and provide its recommendation to the Regional State Committee at the Regional State Committee's next quarterly meeting. At that meeting, the Regional State Committee will vote to recommend approval or denial of the cost allocation waiver request and provide such recommendation to the Members Committee and the SPP Board. At the first SPP Board and Members Committee meeting following the Regional State Committee's vote, the Regional State Committee will present its recommendation regarding the cost allocation waiver request to the SPP Board and Members Committee, and any entity that submitted comments during the comment period may present its recommendation and rationale for approval or denial of the cost allocation waiver request to the SPP Board and Members Committee. The SPP Board will then vote to approve or deny the request.[21] If the SPP Board approves the request, 100% of the annual transmission revenue requirement associated with that Byway facility's costs eligible for cost allocation shall be allocated prospectively to the SPP

---

[19] Proposed SPP, Tariff, attach. J, § III.E.2.c.

[20] Proposed SPP, Tariff, attach. J, § III.E.3.

[21] Proposed SPP, Tariff, attach. J, § III.E.5.

region on a postage-stamp basis.[22]  For an existing Byway facility, the revised cost allocation will become effective on the first day of the calendar month following the SPP Board's approval of the cost allocation waiver.[23]

11.     SPP states that although the dramatic increase in wind generation within some of SPP's pricing zones has created the need for the Byway facility cost allocation waiver process, the proposed process is not tied to a specific type of generation.  SPP claims that, in the future, other types of generation may also require a need for use of the proposed process.[24]

12.     SPP states that its proposal is similar in design to the existing Base Plan Upgrade Waiver Process[25] and the Transformer Waiver Process.[26]  SPP notes that in the Commission's acceptance of the Base Plan Waiver Upgrade Process, the Commission stated that SPP must have some degree of flexibility in making cost allocation

---

[22] Proposed SPP, Tariff, attach. J, § III.E.1.

[23] Proposed SPP, Tariff, attach. J, § III.E.6.

[24] SPP Transmittal at 25.

[25] Under the Base Plan Upgrade Waiver Process, transmission customers may seek waiver so that costs for network upgrades identified under SPP's Aggregate Transmission Service Study process, SPP's process for evaluating long-term transmission service requests, may be classified as Base Plan Upgrade costs for the purpose of cost allocation instead of being directly assigned to the transmission customer.  SPP Tariff, attach. J, § III.C.

[26] SPP Transmittal at 25 (citing SPP, Tariff, attach. J, § III).  Under the Transformer Waiver Process, entities developing a dual-voltage transformer could seek a waiver from the SPP Board of the standard Highway/Byway cost allocation, under which the costs of a dual-voltage transformer are allocated based on the lower voltage level.  Based on the anticipated utilization of the transformer, the entity may seek waiver to allocate the costs of the transformer based on the transformer's higher voltage level instead of the lower voltage level.  SPP, Tariff, attach. J, § III; *Sw. Power Pool, Inc.*, 132 FERC ¶ 61,042, at PP 17, 87 (2010), *order denying reh'g and granting clarification*, 136 FERC ¶ 61,050 (2011); *see also Sw. Power Pool, Inc.*, Docket No. ER10-2244-000, at 1 (Feb. 2, 2011) (delegated order).

determinations and did not find that the Base Plan Waiver Upgrade Process gave the SPP Board too much discretion.[27]

13.     SPP claims that its proposal addresses the deficiencies identified by the Commission in the Rejection Order.[28]  SPP asserts that the three criteria that an applicant must satisfy to be eligible for the cost allocation waiver provide clear, objective standards for the SPP Board.[29]  SPP maintains that the proposed process ensures that the SPP Board has limited discretion in allocating Byway facility costs prospectively to the entire region on a postage-stamp basis.[30]  Additionally, SPP argues that the proposed process is transparent, as it:  (1) provides an opportunity for stakeholders to review and comment on applications; and (2) documents and provides explanation about how SPP staff, committees, and the SPP Board review the information provided by applicants and stakeholders and reach a conclusion about each request.[31]

14.     SPP argues that the proposal does not violate the rule against retroactive ratemaking because any changes in rates relating to the reallocation of costs will apply to future revenue requirements only.  SPP explains that the proposal is not changing rates that were on file with the Commission for settlement of past transactions, nor is it trying to change rates going forward to reallocate previous period revenue requirements collected from ratepayers.[32]

## III.    **Notice and Responsive Pleadings**

15.     Notice of SPP's filing was published in the *Federal Register*, 87 Fed. Reg. 29,743 (May 16, 2022), with interventions and protests due on or before June 14, 2022.[33]  The following entities filed timely motions to intervene:  Ameren Services Company, on

---

[27] SPP Transmittal at 25 (citing *Sw. Power Pool, Inc.*, 111 FERC ¶ 61,118, at P 57 (2005); *Sw. Power Pool, Inc.*, 132 FERC ¶ 61,042 at PP 86-88).

[28] *Id.* at 14.

[29] *Id.* at 16.

[30] *Id.* at 26.

[31] *Id.* at 20.

[32] *Id.* at 29-30.

[33] On May 31, 2022, Kansas Corporation Commission (Kansas Commission) filed a notice of intervention and motion to extend the comment period to June 14, 2022.  On June 7, 2022, a notice was issued granting the request.

behalf of its affiliates Ameren Transmission Company of Illinois, Ameren Illinois Company, and Union Electric Company; American Electric Power Service Corporation, on behalf of its affiliates Public Service Company of Oklahoma (PSO), Southwestern Electric Power Company (SWEPCO), AEP Oklahoma Transmission Company, Inc., and AEP Southwestern Transmission Company, Inc.; Basin Electric Power Cooperative (Basin); Kansas City, Kansas Board of Public Utilities (Kansas City Board); Kansas Electric Power Cooperative, Inc. (KEPCo); Midwest Energy; Missouri Joint Municipal Electric Utility Commission (Missouri Municipal); OG&E; Southwest Transmission, LLC; Sunflower; The Empire District Electric Company; Western Area Power Administration; and Xcel Energy Services Inc., on behalf of its affiliate Southwestern Public Service Company (together, Xcel). Public Utility Commission of Texas filed a timely notice of intervention.

16.     City Utilities of Springfield, Missouri and Arkansas Electric Cooperative Corporation filed a joint motion to intervene and a joint protest with the Kansas City Board and Missouri Municipal (collectively, Indicated Utilities). American Electric Power Service Corporation, on behalf of its affiliates SWEPCO and PSO, Xcel, and OG&E (collectively, Indicated Transmission Owners) filed a joint protest. Sunflower, Basin, and Midwest Energy filed joint comments in support (collectively, Supporting Parties). ITC Great Plains, Inc. (ITC) filed a motion to intervene and comments in support. On June 3, 2022, KEPCo filed a motion for leave to file comments out of time and comments. On June 7, 2022, Kansas Commission filed a motion for leave to submit comments and comments.

17.     On June 15, 2022, Indicated Transmission Owners filed an answer to the supporting comments, and Supporting Parties[34] filed an answer to the protests. On June 16, 2022, SPP filed an answer to the protests.

18.     On June 27, 2022, Evergy Kansas Central, Inc., Evergy Metro, Inc., and Evergy Missouri West, Inc. (collectively, Evergy) filed a motion to intervene out of time.

19.     On July 28, 2022, Commission staff issued a letter informing SPP that its filing was deficient and requesting additional information. SPP filed its response to the deficiency letter (Deficiency Response) on August 29, 2022. Notice of SPP's Deficiency Response was published in the *Federal Register*, 87 Fed. Reg. 54,487 (Sept. 6, 2022), with interventions and protests due on or before September 19, 2022. Indicated Transmission Owners and Indicated Utilities filed protests, and Supporting Parties filed comments. On September 30, 2022, Supporting Parties filed an answer to Indicated Transmission Owners' and Indicated Utilities' protests. On October 5, 2022, SPP filed an answer to Indicated Transmission Owners' and Indicated Utilities' protests. On

---

[34] KEPCo joined Supporting Parties in their answer and in subsequent pleadings.

October 21, 2022, Indicated Transmission Owners filed an answer to SPP's answer and a motion to lodge.

### A.   Comments and Protests

20.     Indicated Transmission Owners argue that SPP has failed to adequately explain and support the three criteria that must be met under the proposed cost allocation waiver process.  Regarding the Capacity Criterion, Indicated Transmission Owners contend that SPP has not supported its assumption that any generating facility unaffiliated with load in a zone is responsible for energy necessarily being exported to another zone, and that it is unclear why SPP chose 100% of resident load instead of another percentage.  Regarding the Flow Criterion, Indicated Transmission Owners assert that SPP does not explain why it selected 70% as the threshold for energy flow from unaffiliated power sources exceeding a percentage of the sum of flows.  Regarding the Benefit Criterion, Indicated Transmission Owners contend that SPP fails to justify selectively measuring the benefits of some facilities but not others solely for the purposes of exporting costs to other regions.[35]  Indicated Transmission Owners generally argue that each of the criteria do not account for changes in future events, and that SPP leaves unanswered the questions of: (1) whether waivers granted can ultimately be revoked; (2) if so, under what process; and (3) who would have the burden to make such a determination.[36]

21.     Indicated Transmission Owners argue that the proposed Tariff language does not specify what SPP will evaluate in developing its recommendation, nor does the language require SPP staff, committees, or the SPP Board to adhere to the three criteria.  Indicated Transmission Owners aver that the proposed Tariff language could permit an application to be considered by stakeholders and the SPP Board, even if a cost allocation waiver application fails to meet the three criteria.[37]  Indicated Transmission Owners argue that the SPP Board retains the power to unilaterally enact cost shifts, while the Commission is the only entity with the power to grant the type of cost allocation waiver proposed here. Indicated Transmission Owners further state that the Commission only waives tariff requirements under specific circumstances, and that this proposal would allow the SPP Board to bypass the Commission in granting what is essentially a tariff waiver, and therefore, the instant proposal is unjust and unreasonable.[38]

---

[35] Indicated Transmission Owners Protest at 16-17.

[36] *Id*. at 18.

[37] *Id*. at 13-14.

[38] *Id*. at 14-15.

22.     Indicated Transmission Owners further claim that the proposal lacks stakeholder support, as the Markets and Operations Policy Committee did not affirmatively recommend that the SPP Board support these Tariff revisions.  According to Indicated Transmission Owners, the proposed Tariff revisions are unsupported for multiple reasons, including SPP's failure to provide any estimate of the total number of Byway facilities for which costs will be reallocated, a rate impact analysis, or any estimate of costs shifts that would occur under this proposal.[39]  Indicated Transmission Owners argue that SPP's proposal is not similar to its Transformer Waiver Process or its Base Plan Upgrade Waiver Process,[40] and that the RCAR process is a more appropriate alternative to address cost allocation issues than SPP's proposal.[41]

23.     Indicated Utilities argue that the proposal is inconsistent with the requirements of Order Nos. 890[42] and 1000,[43] and that SPP does not explain how allowing entities to relitigate the application of Highway/Byway cost allocation results in predictable *ex ante* cost allocation.  Indicated Utilities claim that the three zones with the highest percentage of zonal wind capacity generally enjoy among the lowest wholesale power prices in SPP, and fared well in an SPP benefit-cost analysis.[44]  Indicated Utilities argue that the proposal deviates from the historical reliance on an "unintended consequences" review under the RCAR process and fails to comport to the reasoning SPP relied upon when

---

[39] *Id*. at 18-19.

[40] *Id*. at 21-22.

[41] *Id*. at 22-23.

[42] *Preventing Undue Discrimination & Preference in Transmission Serv.*, Order No. 890, 118 FERC ¶ 61,119, *order on reh'g*, Order No. 890-A, 121 FERC ¶ 61,297 (2007), *order on reh'g*, Order No. 890-B, 123 FERC ¶ 61,299 (2008), *order on reh'g*, Order No. 890-C, 126 FERC ¶ 61,228, *order on clarification*, Order No. 890-D, 129 FERC ¶ 61,126 (2009).

[43] *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g and clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth.* v. *FERC*, 762 F.3d 41 (D.C. Cir. 2014).

[44] Indicated Utilities Protest at 13-14 (citing SPP, *Regional Cost Allocation Review (RCAR II)*, at 35 (July 11, 2016), https://www.spp.org/documents/46235/rcar%202%20report%20final.pdf).

introducing the Highway/Byway cost allocation method.[45]  Indicated Utilities claim that the wind-rich SPP zones are not economically disadvantaged by, nor do they require relief from, the Highway/Byway cost allocation method.[46]

24.    Indicated Utilities contend that the three criteria SPP proposes are inappropriate, as the criteria provide the SPP Board too much discretion in determining the disposition of a cost allocation waiver request, both because there is not enough test period specificity and because SPP does not specify the assumptions used to demonstrate qualification for such a waiver.[47]  Indicated Utilities argue that the Capacity, Flow, and Benefit Criteria all incorrectly assume that excess unaffiliated generation within a zone provides zero local customer benefits, and that all of the SPP region benefits when the output of these resources flows from the zone in which they are located.[48]  Indicated Utilities oppose the proposed Benefit Criterion test, claiming that it would allow customers within a zone to receive the majority of benefit from a project and pay a minimal share of the cost, as long as minimal benefits accrue outside the zone.[49]

25.    Indicated Utilities argue that if SPP member utilities are unreasonably disadvantaged by current cost allocations, they should use currently available processes to rectify the situation, such as filing a rate change pursuant to FPA section 205 or requesting relief through the Markets and Operations Policy Committee during the RCAR process, as described in section III.D of Attachment J of the Tariff.[50]

26.    Supporting Parties claim that SPP has experienced significant changes since the implementation of the Highway/Byway cost allocation method, including a significant increase in wind generation.  Supporting Parties state that many of these renewable energy resources are located in areas far from the load they will serve, noting that three zones in SPP currently have wind generation that is greater than 100% in excess of peak load in the zone.[51]  KEPCo generally agrees with Supporting Parties and claims that due to the shift in renewable energy generation capacity sited at locations far from load, SPP

---

[45] *Id*. at 16.

[46] *Id*. at 10.

[47] *Id*. at 17.

[48] *Id*. at 10, 19-21.

[49] *Id*. at 21-22.

[50] *Id*. at 10-11, 22-23.

[51] Supporting Parties Comments at 11-12.

has pricing zones where generation greatly exceeds load.[52]  Kansas Commission also agrees with Supporting Parties and states that the State of Kansas has two of the three SPP-identified wind-rich zones that have been disproportionately impacted by the influx of renewable wind generation resources and an exorbitant amount of capacity as compared to demand.[53]  Supporting Parties further argue that the gap between those who pay the costs of Byway facilities and those who benefit from them cannot go unaddressed because the current cost allocation is unjust, unreasonable, unduly discriminatory, and preferential.[54]  ITC and Kansas Commission assert that the proposed Tariff revisions will produce a more accurate, fair, and reasonable allocation of costs to beneficiaries, as certain SPP pricing zones contain a substantial, and growing, excess of generation capacity.[55]  KEPCo and Kansas Commission claim that SPP's proposal would remedy the cost burden on transmission customers and ensure that certain Byway facilities' costs are allocated roughly commensurate with the benefits that they provide.[56]

27.     Supporting Parties argue that the proposed Tariff revisions are just and reasonable, and include specific criteria that must be met in order for a cost allocation waiver to be approved.[57]  Supporting Parties claim that the proposed cost allocation waiver process would only apply to approximately 2.8% of the total number of existing Byway facilities based on the Capacity and Flow Criteria.[58]  Supporting Parties state that the Capacity Criterion limits the potential Byway facilities that could qualify for the cost allocation waiver because they are restricted to zones where unaffiliated resources exceed zonal load.  Supporting Parties argue that the Flow Criterion addresses the Commission's concerns about the percentage of power flows that would be sufficient to support a cost allocation waiver.[59]  Supporting Parties agree with SPP's proposed requirement that the Benefit Criterion must be satisfied in terms of adjusted production cost savings and/or savings through the Integrated Marketplace.  Supporting Parties contend that the proposal is transparent, detailing the application and decision-making process for a cost allocation

---

[52] KEPCo Comments at 1-2.

[53] Kansas Commission Comments at 1-2.

[54] Supporting Parties Comments at 15.

[55] ITC Comments at 2-3; Kansas Commission Comments at 1-2.

[56] KEPCo Comments at 1-2; Kansas Commission Comments at 4-5.

[57] Supporting Parties Comments at 16.

[58] *Id*. at 7.

[59] *Id*. at 18-19.

waiver request.[60]  Supporting Parties and ITC state that the proposed Tariff revisions reflect an extensive stakeholder process, which ITC states included input from SPP customers, state regulators, and other members.[61]

### B.  Answers

28.     In response to Indicated Transmission Owners, SPP argues that 100% of the average peak resident load is an appropriate threshold for the Capacity Criterion because: (1) unaffiliated generation nameplate capacity above that level is not necessary for non-firm energy supply in the local zone in an average month, and is not needed for resource adequacy, which is being met by affiliated resources; and (2) such excess generation capacity is associated with a high level of energy exports from the local zone.[62]  SPP reiterates that the proposed 70% threshold for the Flow Criterion is roughly equal to the average unaffiliated flow on Byway facilities in zones meeting the Capacity Criterion and points out that the 70% threshold is more than twice the 33% regional allocation of cost for a Byway facility that would occur absent a cost allocation waiver being approved.[63]  SPP claims that an application for a cost allocation waiver will be deficient if it does not meet the Benefit Criterion by quantifying benefits using adjusted production cost, savings through the Integrated Marketplace, or a combination of the two.[64]  SPP claims that the 50% threshold requirement of the Benefit Criterion stems from the need to protect zones from shouldering disproportionate costs.  SPP explains that it is currently possible that a zone could bear over 67% of the cost and yet receive virtually zero percent of the economic benefits, and the proposed 50% threshold would help ensure that benefits are at least roughly commensurate with costs.[65]

29.     SPP asserts that protesters fundamentally misunderstand the purpose and limitations of the RCAR process and ignore the specific and narrow issue that is being addressed by the proposal.  SPP explains that the RCAR may identify certain zones that have a higher or lower cost-to-benefit ratio based on the 40-year review of the

---

[60] *Id*. at 20-21.

[61] *Id*. at 22-23; ITC Comments at 2-3.

[62] SPP Answer at 9.

[63] *Id*. at 10-11.

[64] *Id*. at 13.

[65] *Id.* at 15-16.

Highway/Byway allocation analysis, but those results are not specific enough to address the problem SPP is attempting to resolve.[66]

30.     SPP contends that its proposed Tariff provisions specifying that all three criteria must be met to receive the cost allocation waiver for regional cost reallocation appropriately limits the SPP Board's discretion and narrows the scope of the proposal. SPP states that the SPP Board's decision cannot be divorced from the three proposed criteria[67] and that the criteria are largely similar to those in the Transformer Waiver Process.[68]

31.     Indicated Transmission Owners disagree with Supporting Parties and contend that Supporting Parties' suggestion that proposed cost allocation waivers will be infrequently approved undermines SPP's case for these proposed Tariff changes. Indicated Transmission Owners claim that this low number of transmission facilities demonstrates that on balance, the current Byway allocation is generally producing just and reasonable outcomes.[69]  Indicated Transmission Owners argue that if SPP's existing cost allocation has become unjust and unreasonable, then the Highway/Byway method is unjust and unreasonable in its entirety.[70]

32.     Supporting Parties claim that, read in the context of the proposed Tariff revisions, an application must satisfy the three criteria in order to be approved, not some other, unknown criteria.[71]  Supporting Parties argue that any contention that the SPP Board would supplant the Commission's authority to make decisions on cost allocation waiver applications lack merit, as this cost allocation waiver process would be within the filed rate.[72]  Supporting Parties claim that SPP has demonstrated the reasonableness of the 50% threshold associated with the Benefit Criterion, as it ensures that the majority of

---

[66] *Id*. at 19.

[67] *Id*. at 22-23.

[68] *Id*. at 26.

[69] Indicated Transmission Owners Answer at 2-3.

[70] *Id*. at 3-4.

[71] Supporting Parties Answer at 6-7.

[72] *Id*. at 8-9.

benefits from a Byway facility is received by zones outside of the local zone where the transmission facility is located.[73]

33.     Supporting Parties also argue that SPP does not need to provide analyses of rate or other arguments because the proposal is a process where entities can request a cost allocation change only if they meet the three criteria and the SPP Board approves the request.[74]  Supporting Parties aver that arguments against the proposal on the basis that the RCAR is sufficient are misplaced, as the RCAR does not apply to the circumstances at issue in the filing.  Supporting Parties argue that the RCAR is a theoretical review for policy purposes, and not ratemaking.[75]

## IV.     **Deficiency Response and Responsive Pleadings**

### A.     **Deficiency Response**

34.     In response to questions in the deficiency letter asking SPP to explain whether SPP staff and the SPP Board would have discretion to decide the categories of benefits to consider for a particular cost allocation waiver request, SPP specifies that SPP staff's and the SPP Board's determination on whether the Benefit Criterion is met is based solely on adjusted production cost savings, savings through the Integrated Marketplace, or a combination of these two.  SPP explains that the proposed Tariff language allows an applicant the flexibility to provide evidence of adjusted production cost savings, Integrated Marketplace savings, or both when quantifying the Benefit Criterion.[76]  SPP states that it is willing to submit a compliance filing to modify the proposed Tariff language stating that "The benefit *may* be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace" to instead state "The benefit *shall* be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace."[77]

35.     SPP states that when SPP staff evaluates an applicant's benefits, it will first analyze the adjusted production cost savings.  SPP explains that if an applicant submits quantification of savings through the Integrated Marketplace, then SPP staff will review it and include the corresponding analysis in its report and recommendation.  SPP notes

---

[73] *Id*. at 14.

[74] *Id*. at 17.

[75] *Id*. at 18.

[76] SPP Deficiency Response at 5.

[77] *Id.* at 5, 6 (emphasis added).

that the applicant is not required to provide Integrated Marketplace analysis if it sufficiently demonstrates adjusted production cost savings.[78]  SPP emphasizes that if an applicant does not demonstrate sufficient adjusted production cost savings, Integrated Marketplace savings, or combination of the two, then the SPP Board is not permitted to grant the cost allocation waiver request.[79]

36.    In response to questions in the deficiency letter about the basis upon which the SPP Board would approve or deny a cost allocation waiver request, SPP notes that pursuant to SPP's Bylaws, the SPP Board's votes must be held by secret ballot.[80] However, SPP clarifies that the SPP Board will base its decision only on whether the Capacity, Flow, and Benefit Criteria are satisfied and shall not consider other factors.[81] SPP explains that the Board does not have the discretion to approve a cost allocation waiver when one or more of the three specified criteria have not been met or to substitute alternative criteria.  SPP states that the discretion exercised by the Board is limited only to whether or not the three criteria have been met.[82]

37.    In response to a question about documentation for the Board's decision on a cost allocation waiver request, SPP states that the following information will be posted on SPP's public website:  evidence supporting the cost allocation waiver request that is submitted by the applicant; analysis, recommendation, and rationale prepared by SPP staff; and any other submissions regarding the cost allocation waiver request that are provided by interested parties.  SPP states that, furthermore, the meetings in which the cost allocation waiver request was considered will be documented in the publicly available and posted minutes of the SPP Cost Allocation Working Group, Regional State Committee, and Members Committee.[83]  SPP states that consistent with its obligations to provide an annual report to the Commission on the disposition of waivers of Base Plan

---

[78] *Id.* at 6.

[79] *Id.* at 7.

[80] *Id.* at 7.

[81] *Id.* at 8-9.

[82] *Id.* at 10.

[83] *Id.* at 6-7.

funding, SPP will also include documentation regarding any Byway facility cost allocation waiver requests that have been approved or denied in the prior year.[84]

## B.   Comments, Protests, and Answers

38.     Indicated Transmission Owners contend that SPP's Deficiency Response clarifies that SPP's proposal would permit SPP to change rates without Commission involvement. Indicated Transmission Owners argue that permitting the SPP Board to decide when and under what circumstances to waive cost allocation rules would be an unlawful sub-delegation of the Commission's rate-setting authority.[85]  Indicated Transmission Owners assert that the Deficiency Response confirms that the SPP Board may accept or reject factual, evidentiary showings tendered by cost allocation waiver applicants. Indicated Transmission Owners argue that this adjudicatory function, when rates are at issue, is vested with the Commission, and that changing "may" to "shall" in the proposed Tariff language fails to clarify the question of what evidence of adjusted production cost or Integrated Marketplace savings would justify departure from the Tariff's cost allocation rules.[86]  Indicated Transmission Owners contend that despite SPP staff's review, the application of the three criteria remains within the SPP Board's discretion, and that SPP fails to explain why stakeholder committees should weigh in with recommendations if the three criteria are objective.[87]  Indicated Transmission Owners state that if the existing Highway/Byway cost allocation can be proven to no longer be just and reasonable and not unduly discriminatory, only the Commission can authorize a change to that process.[88]

39.     Indicated Utilities argue that SPP's Deficiency Response demonstrates that the proposed Flow and Benefit Criteria provide excessive discretion to the SPP staff and SPP Board, which creates the opportunity for undue discrimination in the application of those proposed criteria.[89]  Indicated Utilities claim that revisions of the allocation of costs of specific Byway facilities should be addressed in an FPA section 205 filing proposing

---

[84] *Id.* at 9-10 (citing *Sw. Power Pool, Inc.*, 112 FERC ¶ 61,319, at P 51 (2005) and SPP, Tariff, attach. J, §§ III.B.1-2).

[85] Indicated Transmission Owners Deficiency Response Protest at 2.

[86] *Id*. at 3-4.

[87] *Id*. at 4.

[88] *Id*. at 5.

[89] Indicated Utilities Deficiency Response Protest at 5-6.

that specific reallocation.[90]  Indicated Utilities contend that nothing in SPP's proposed Tariff revisions prevents the SPP Board from approving an application based on different analyses of adjusted production cost savings, savings through the Integrated Marketplace, or a combination of the two.  Indicated Utilities contend that SPP's description of SPP staff's analytical analysis is not part of the Tariff, and even if such a description were included in the Tariff, the description itself would be subject to interpretation and, therefore, discretionary in its application.[91]

40.     Indicated Utilities state that the models and assumptions that SPP staff will use for the adjusted production cost analysis are unidentified and the results are not binding on the SPP Board.  Indicated Utilities claim that the use of Integrated Marketplace savings similarly does not identify models, provide for the validation of analytical assumptions, or otherwise constrain the discretion of the SPP Board in relying on some, all, or none of SPP staff's analysis.[92]  Indicated Utilities argue that SPP's proposal would fail the Commission's four-part test for evaluating requests for waiver of tariff provisions.[93]

41.     Supporting Parties state that the proposed Tariff provisions make clear that all three criteria must be met for the cost allocation waiver, and that the Benefit Criterion requires a demonstration of sufficient benefits quantified in terms of adjusted production cost savings, savings through the Integrated Marketplace, or both.[94]  Supporting Parties contend that the Deficiency Response confirms that the SPP Board is bound by the three criteria.[95]  Supporting Parties contend that SPP staff and the SPP Board do not have discretion in adding to or ignoring the stated criteria.[96]  Supporting Parties contend that, contrary to Indicated Utilities' claims, the Commission's policy for granting waivers from filed rates does not apply to this filing.  Supporting Parties assert that the Commission is not ceding ratemaking authority to SPP, as the proposed Tariff revisions provide clear criteria, specify that all criteria must be satisfied, and state the specific rate

---

[90] *Id*. at 5.

[91] *Id*. at 8.

[92] *Id*. at 10-11.

[93] *Id*. at 12.

[94] Supporting Parties Deficiency Response Comments at 5; *see also* Supporting Parties Deficiency Response Answer at 3-4.

[95] Supporting Parties Deficiency Response Comments at 7-8.

[96] Supporting Parties Deficiency Response Answer at 4.

treatment applicable (e.g., regional cost allocation for facilities that satisfy all three criteria).[97]

42.     SPP argues that Indicated Transmission Owners' and Indicated Utilities' protests are beyond the scope of the questions posed in the deficiency letter or SPP's Deficiency Response.  SPP claims that these parties largely reiterate their previous arguments and do not demonstrate that SPP's filing is unjust, unreasonable, or unduly discriminatory.[98] SPP argues that it has not requested that the Commission grant any type of waiver from the Tariff itself because the proposed cost allocation waiver process would be included in the Tariff, and therefore, there is no requirement that SPP's filling must be viewed under the Commission's waiver standards.[99]

43.     In response to SPP's answer, Indicated Transmission Owners argue that SPP makes the same arguments that the Commission rejected in the Rejection Order and does not explain why the Commission should reach a different result here.[100]  Indicated Transmission Owners also submit and move to lodge a copy of SPP's draft 2022 RCAR report, which, they assert, shows that all 17 SPP transmission pricing zones have a cost-benefit ratio above 1.0 for projects approved for construction between June 2010 and January 2020.  Indicated Transmission Owners maintain that the results have improved since the last RCAR report in 2016 and that the draft 2022 RCAR report indicates that SPP's Highway/Byway cost allocation method remains just and reasonable. Indicated Transmission Owners contend that SPP's proposal in the instant proceeding is unnecessary and risks upending the equitable balance the existing Highway/Byway cost allocation method has achieved.[101]

## V.     Discussion

### A.     Procedural Matters

44.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2021), the notices of intervention and timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

---

[97] *Id*. at 5-6.

[98] SPP Deficiency Response Answer at 2.

[99] *Id*. at 6.

[100] Indicated Transmission Owners Deficiency Response Answer at 3-4.

[101] *Id.* at 4-5.

45.     Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214(d), we grant Evergy's late-filed motion to intervene given its interest in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

46.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2021), prohibits an answer to a protest or answer unless otherwise ordered by the decisional authority.  We accept SPP's, Indicated Transmission Owners', and Supporting Parties' answers because they have provided information that assisted us in our decision- making process.  Additionally, we grant Indicated Transmission Owners' motion to lodge the draft 2022 RCAR report as it provides information that assisted us in our decision-making process.

## B.     Substantive Matters

47.     We accept SPP's proposed Tariff revisions, subject to condition, effective August 1, 2022, as requested, and direct SPP to submit a compliance filing within 30 days of the date of this order, as discussed below.[102]

48.     We find that SPP's proposal to establish a process through which, on a case-by-case basis, the costs of Byway facilities can be fully allocated to the SPP region is just and reasonable and not unduly discriminatory or preferential because it will help ensure that the costs of Byway facilities are allocated in a manner that is at least roughly commensurate with estimated benefits,[103] consistent with the cost causation principle.[104]

---

[102] The United States Court of Appeals for the District of Columbia Circuit has held that, in certain circumstances, the Commission has "authority to propose modifications to a utility's [FPA section 205] proposal *if the utility consents to the modifications*."  *NRG Power Mktg., LLC v. FERC*, 862 F.3d 108, 114-15 (D.C. Cir. 2017).

[103] SPP Transmittal at 16 ("The three criteria . . . ensure that costs will be roughly commensurate with the benefits produced by certain Byway Facilities based on regional utilization of that transmission facility.").

[104] The cost causation principle requires costs to be allocated to those who cause the costs to be incurred and reap the resulting benefits.  *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 87 (D.C. Cir. 2014) (citing *Nat'l Ass'n of Regul. Util. Comm'nrs v. FERC*, 475 F.3d 1277, 1285 (D.C. Cir. 2007)); *see also* Order No. 1000, 136 FERC ¶ 61,051 at  P 10 ("[T]he principles-based approach requires that all regional and interregional cost allocation methods allocate costs for new transmission facilities in a manner that is at least roughly commensurate with the benefits received by those who will pay those costs.  *Costs may not be involuntarily allocated to entities that do not receive benefits*.") (emphasis added).

Upon receiving an application, the SPP Board will approve a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region only if the facility meets the Capacity, Flow, and Benefit Criteria laid out in the proposed Tariff revisions. These criteria are designed to show that the Byway facility is primarily used to transmit energy outside the zone where the facility is located and provides significant benefits to other zones in the SPP region.[105] By allocating 100% of the costs of a Byway facility to the SPP region on a postage-stamp basis if the facility is shown to provide significant benefits to zones other than the zone in which the Byway facility is located, we find that SPP's proposal will better align the allocation of the costs of the Byway facility with its beneficiaries.[106]

49.     Commissioner Danly suggests that SPP's proposal is designed to facilitate the shifting of some states' public policy costs onto other states. But Commissioner Danly fails to identify any record evidence to support that conclusion. Indeed, the record suggests otherwise. Eleven out of the fourteen SPP states do not have active renewable energy standards.[107] And a majority of SPP states (7 of 8 of which do not have active renewable portfolio standards) voted in favor of the proposal.[108] Such robust support for the proposal, including among states without public policies, strongly undercuts his claims about improper cost shifts. In any case, what matters here is that SPP's proposal establishes regional cost sharing, consistent with the cost causation principle, where the relevant infrastructure provides significant benefits to the entire region.[109]

50.     We disagree with protesters' arguments that the three criteria used to evaluate requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region are inappropriate and insufficiently justified. The Capacity Criterion evaluates whether generation capacity in the zone in which the Byway facility is located

---

[105] SPP Transmittal at 29 ("The narrow, objective approach of the Byway Facility cost allocation waiver process allows for specific Byway Facility costs to be borne by the SPP Region if the SPP Region is primarily benefiting from that Byway Facility.").

[106] Supporting Parties Comments at 12 ("Byway Facilities thus confer a benefit to all load in SPP because they are used to export low-cost renewable energy out of the host Zone. However, the Byway Facility cost allocation results in the ratepayers in the host Zone paying a disproportionate share of the costs for such facilities (67%) while most of the benefits accrue to load outside the host Zone.").

[107] *See Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022) (Danly, Comm'r, dissenting at P 5).

[108] *Id.*

[109] *Supra* P 48.

exceeds load in the zone, and such excess in generation capacity is associated with a high level of energy exports from a local zone.[110] Therefore, the Capacity Criterion is a reasonable measure of whether transmission facilities in the zone are being used to serve load in other zones.[111] The Flow Criterion evaluates whether energy flows on the Byway facility result from generation not affiliated with load in the zone, and therefore is a reasonable measure of whether the transmission facilities are used to support energy flows to other zones. With regard to the threshold in the Flow Criterion of 70%, we find that SPP sufficiently justifies the threshold as greater than the 66% average flow not associated with load in the zone on Byway facilities in zones meeting the Capacity Criterion; as such, the 70% threshold is indicative of higher-than-average energy flows on the Byway facility to other zones.[112] The Benefit Criterion evaluates whether there are benefits to zones other than the zone in which the Byway facility is located, and therefore is a reasonable measure of whether the Byway facility provides regional benefits.

51.     With regard to the types of benefits SPP will consider, SPP's assessment of whether the Benefit Criterion is satisfied will be based on evidence of the Byway facility's economic benefits to zones other than the zone in which the facility is located, quantified through adjusted production cost savings and/or savings through the Integrated Marketplace.[113] We find that it is reasonable for SPP to analyze benefits based on adjusted production cost savings and/or savings through the Integrated Marketplace, as the Commission has previously accepted cost allocation proposals based on these types of transmission facility benefits.[114] We note SPP's statement that a request to allocate

---

[110] SPP Answer at 9.

[111] SPP Transmittal at 17.

[112] *Id.* at 18. SPP notes that the average unassociated flow percentage on all Byway facilities is approximately 27%, but the average unassociated flow on Byway facilities in zones that meet the proposed Capacity Criterion is approximately 66%. *Id.* In addition, SPP notes that its inquiry focuses on resources not associated with load within the applicant's zone, as those resources provide the zone's load with less benefits than those offered by resources associated with load. *Id.* at 17.

[113] *Id.* at 19-20; SPP Answer at 13; SPP Deficiency Response at 7.

[114] *See, e.g.*, *Midcontinent Indep. Sys. Operator, Inc.*, 170 FERC ¶ 61,242, at P 31 (2020) ("[I]t is just and reasonable to allocate the entirety of MISO's share of the cost of MISO-PJM interregional economic transmission projects above 100 kV but below 345 kV . . . using MISO's current Adjusted Production Cost Savings metric."); *Sw. Power Pool, Inc.*, Docket Nos. ER18-2243-000 and ER18-2245-000 (Oct. 10, 2018) (delegated order) (accepting an SPP cost allocation proposal, with SPP supporting its proposal in

100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region will be deficient if it does not contain at least one of these forms of benefits analysis.[115]

52.     We find that SPP's proposal addresses the concerns that the Commission articulated in the Rejection Order regarding transparency.  In the Rejection Order, the Commission determined that SPP's proposal in that proceeding lacked transparency because the Tariff provisions did not indicate that SPP would document and provide an explanation about how SPP, the relevant committees, and the SPP Board would evaluate applicants' information and reach conclusions to approve a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region.[116]  In the instant proposal, SPP proposes Tariff provisions that require SPP staff to "provide a written recommendation and rationale regarding the approval or denial" of such requests.[117]  We find that the proposed Tariff revisions provide specific procedures for documenting and explaining SPP's analysis and recommendations.  We further note that SPP commits to include within future annual filings documentation of any requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region that are granted or rejected under its proposal.[118]

53.     We also find that SPP's proposal addresses the concerns related to discretion that the Commission articulated in the Rejection Order.  In the Rejection Order, the Commission found that SPP's prior proposal granted the SPP Board too much discretion because it contained "no objective standards, criteria, or thresholds for the SPP Board's decision whether to approve or deny a waiver."[119]  In the instant proposal, SPP included

---

part by referencing the millions of dollars in avoided uplift payments to the SPP Integrated Marketplace footprint over the lifespan of the relevant facility).

[115] SPP Answer at 13.

[116] Rejection Order, 175 FERC ¶ 61,198 at P 40.

[117] Proposed SPP, Tariff, attach. J, § III.E.5.c.  SPP also notes in its Deficiency Response that "SPP staff's written recommendation and rationale will be public information and posted on the SPP website."  SPP Deficiency Response at 6.  Moreover, SPP commits to include on its website the Cost Allocation Working Group, Regional State Committee, and Members Committee recommendations and meeting materials.  *Id.* at 7.

[118] SPP Deficiency Response at 9 ("SPP will include within such future annual filings documentation of any waiver requests granted or rejected under this Proposed Tariff language.").

[119] Rejection Order, 175 FERC ¶ 61,198 at P 39.

Capacity, Flow, and Benefit Criteria that will be used to determine whether a Byway facility is eligible for 100% regional postage-stamp cost allocation.[120] By establishing clear eligibility criteria and limiting the SPP Board's consideration to whether a Byway facility meets those criteria when deciding whether to grant or deny a request for 100% regional postage-stamp cost allocation, we no longer have concerns that the proposal gives SPP too much discretion in making cost allocation decisions.

54.     However, we find that there are two aspects of the proposed Tariff language that do not provide sufficient specificity about the limitations on SPP's discretion that SPP articulates in its Deficiency Response.  First, with regard to the Benefit Criterion, the Tariff language states that "[t]he benefit may be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace."[121]  The use of the word "may" in the proposed Tariff language could be read to allow the SPP Board to consider alternative methods for calculating benefits beyond adjusted production cost savings, savings through the Integrated Marketplace, or a combination of the two.  In the Deficiency Response, SPP clarifies that its intent with the proposed Tariff language is to provide applicants with the option of submitting evidence of adjusted production cost savings, savings through the Integrated Marketplace, or both, but "not to broaden the scope to permit any other type of metric to be used."[122]  Further, SPP states that, if the Commission believes the proposed Tariff language should be clarified, SPP is willing to change the language to instead state that "[t]he benefit *shall* be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace."[123]  To clarify the proposed Tariff language and ensure that there is sufficient transparency about how SPP will evaluate whether a request satisfies the Benefit Criterion, we direct SPP to replace the word "may" with "shall,"[124] consistent with SPP's commitment, in the compliance filing ordered below.

55.     Second, we find that the proposed Tariff language does not specify the basis upon which the SPP Board will make its decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region.[125]  In

---

[120] *See supra* P 9.

[121] Proposed SPP, Tariff, attach. J, § III.E.2.c.

[122] SPP Deficiency Response at 5.

[123] *Id.* at 5-6 (emphasis added).

[124] Proposed SPP, Tariff, attach. J, § III.E.2.c.

[125] *See* Proposed SPP, Tariff, attach. J, § III.E.5.j (stating only that "[t]he SPP Board of Directors shall vote to approve or deny the waiver request at the first

its Deficiency Response, SPP states that the discretion exercised by the SPP Board is limited only to whether the Capacity, Flow, and Benefit Criteria have been met, and that the Board does not have the discretion to approve a request when one or more of the specified criteria have not been met or to substitute alternative criteria in lieu of those defined in the proposed Tariff language.[126]  We find that this limitation on the SPP Board's discretion must be included in the Tariff for the proposal to be just and reasonable and not unduly discriminatory or preferential.  Without such a limitation in the Tariff, the SPP Board could potentially base its decision on other unidentified factors, and the proposed process for evaluating requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region would not provide sufficient transparency in advance as to what criteria the SPP Board will consider when evaluating such requests.  Therefore, we direct SPP, in the compliance filing ordered below, to add subsection ii to section III.E.5.j of SPP's Tariff to specify that the SPP Board's decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region will be based solely on whether the Capacity, Flow, and Benefit Criteria are satisfied, consistent with SPP's stated intent in its Deficiency Response.

56.     With regard to protesters' arguments that the reallocation of transmission costs would undermine transparency and predictability in cost allocation, we find that transparency and certainty is sufficiently established because, with the compliance filing that we direct in this order, the process for evaluating a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region is described in the Tariff with adequate specificity.  Specifically, the proposed Tariff language outlines the application process and stipulates the criteria that a Byway facility must meet to qualify for 100% regional, postage-stamp cost allocation.  This provides transparency and predictability to parties about the possibility for 100% regional cost allocation when a Byway facility meets the stated criteria.

57.     Protestors raise concerns regarding whether a waiver, once granted, can be revoked and under what circumstances such revocation would occur.  SPP's proposal does not include any such waiver revocation process.  Nonetheless, for the reasons discussed in this order, we find that SPP has satisfied its burden under FPA section 205 to demonstrate that its proposal is just and reasonable and not unduly discriminatory or preferential.  Because we find that SPP's proposal is just and reasonable and not unduly

---

SPP Board of Directors and Members Committee meeting following the Regional State Committee's vote to recommend approval or denial of the waiver request").

[126] SPP Deficiency Response at 10; *see also id.* at 9 ("The Proposed Tariff language establishes no other factors or considerations upon which the Board can base its decision.").

discriminatory or preferential, we need not consider alternative proposals, such as a waiver revocation process.[127]

58.     We disagree with protesters' arguments that the cost allocation issues that SPP outlines in its filing should be addressed through the RCAR process rather than SPP's proposed process for evaluating requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region.  SPP, by submitting a filing under FPA section 205, only has the responsibility to demonstrate that its proposal is just, reasonable, and not unduly discriminatory or preferential,[128] not to demonstrate that the existing processes in its Tariff are insufficient to address the concerns identified in its filing.  Thus, we need not reach the question of whether these cost allocation issues are better addressed through the existing RCAR process.

59.     We disagree with protesters' arguments that SPP's proposal is essentially a tariff waiver request and that SPP must demonstrate that it has met the Commission's four-part test for granting tariff waivers.  SPP's filing does not request waiver of a provision in its Tariff.  Instead, SPP is proposing revisions to its Tariff under FPA section 205 to establish an SPP-administered process for evaluating requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region.

60.     We agree with SPP that the proposed process for evaluating requests to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region does not unlawfully sub-delegate the Commission's ratemaking authority.  As SPP points out, the Commission has previously approved other Tariff revisions that provided the SPP Board with flexibility in cost allocation matters.[129]  The instant proposal will similarly provide the SPP Board with flexibility in cost allocation for specific Byway facilities, on a case-by-case basis, under specified conditions that are clearly outlined in the Tariff.  We also note that regional transmission organizations/independent system operators (RTOs/ISOs), as independent entities, have governing boards with some discretion in making decisions related to transmission planning and cost allocation.

61.     Finally, we disagree with protesters' assertions that the models and assumptions that SPP staff will use to analyze benefits are unidentified.  On the contrary, SPP explains in its transmittal how adjusted production costs and energy cost savings through the

---

[127] *See, e.g., Cities of Bethany v. FERC*, 727 F.2d 1131, 1136 (D.C. Cir. 1984) (when determining whether a proposed rate was just and reasonable, the Commission properly did not consider "whether a proposed rate schedule is more or less reasonable than alternative rate designs").

[128] 16 U.S.C. § 824d.

[129] *See Sw. Power Pool, Inc.*, 111 FERC ¶ 61,118, at P 57 (2005).

Integrated Marketplace will be calculated and measured.[130]  Specifically, SPP states that "[a]djusted production cost for each Zone is calculated as:  (1) the cost of electricity production by resources located in the Zone, plus (2) the cost of power purchases to serve load in the Zone, less (3) the revenue from power sales by resources in the Zone," and that economic model simulations quantify these amounts and then compare these components with and without the Byway facility at issue.[131]  SPP also specifies that savings through the Integrated Marketplace can be measured as the reduction in the amount of the day-ahead market uplift payments to load in other zones that is attributable to the Byway facility.  SPP emphasizes that the benefit calculated by the adjusted production cost and market analyses is to be quantified on a present value basis over the remaining lives of the applicant facilities.[132]  Furthermore, we note that SPP states that its staff's analysis, recommendation, and rationale will be made public.[133]

The Commission orders:

(A)      SPP's proposed Tariff revisions are hereby accepted, effective August 1, 2022, as requested, subject to SPP submitting a further compliance filing, as discussed in the body of this order.

(B)      SPP is hereby directed to submit a further compliance filing within 30 days of the date of this order, as discussed in the body of this order.

By the Commission.  Commissioner Danly is dissenting with a separate statement
                                    attached.
                                    Commissioner Christie is dissenting with a separate statement
                                    attached.

( S E A L )

Kimberly D. Bose,
Secretary.

---

[130] SPP Transmittal at 19-20.

[131] *Id.* at 19.

[132] *Id*. at 19-20.

[133] SPP Deficiency Response at 9 ("The following will be made publicly available and posted on SPP's website . . . analysis, recommendation, and rationale prepared by SPP staff.").

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                    Docket No.  ER22-1846-001

(Issued October 28, 2022)

DANLY, Commissioner, *dissenting*:

1.      I dissent from this order[1] because it grants Southwest Power Pool, Inc. (SPP) too much discretion to waive the transmission cost allocation mechanisms established in its tariff to reallocate costs for existing transmission projects largely as it deems fit.  As such, SPP's proposal suffers nearly the same failings as a substantially similar Federal Power Act section 205[2] proposal that SPP submitted and that the Commission correctly rejected last year.[3]  The majority reaches the opposite result this time, and now grants SPP the power to socialize across the region a much larger share of the enormous costs of the transmission expansion that is designed to facilitate some individual states' renewable portfolio standards and other transmission build-out undertaken to accommodate new wind resources.

2.      When designing regimes for transmission planning and expansion, there is no single question more important than who pays.  The record demonstrates that certain areas in SPP are suitable and popular for wind projects, indeed, so much so that there is too much wind and new transmission is necessary to export it to other areas.[4]  The zones with too much wind also pay most of the cost of the transmission necessary to export the excess.[5]  Specifically, the SPP tariff provides that 67% of the cost of "Byway" transmission between 100 kV and 300 kV is paid in the local area.[6]  SPP proposes on a case-by-case process to waive the tariff and reallocate 100% of these Byway costs across the region.[7]  But let's not get lost in the details.  The punchline is that SPP decides when

---

[1] *Southwest Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022).

[2] 16 U.S.C. § 824d.

[3] *See Southwest Power Pool, Inc.*, 175 FERC ¶ 61,198, at PP 39-41 (2021).

[4] *See Southwest Power Pool, Inc.*, 181 FERC ¶ 61,076 at P 7.

[5] *See id.*

[6] *Id.*

[7] *Id.* P 5.

to socialize the costs of "Byway" transmission projects, most of which are only going to be necessary in order to ensure that new renewable generation can obtain the revenue streams that come with access to markets.

3.      In response to its prior rejected proposal, SPP now proposes "capacity," "flow," and "benefit" criteria to limit when it can decide to socialize transmission costs, but I am fully persuaded by protestors' arguments that these criteria are either arbitrary or insufficiently specific, and that they will serve to do little other than grant SPP near boundless discretion as to how they will be applied.[8]  I further agree that if we are going to allow SPP to socialize Byway transmission costs contrary to its tariff, we should not do so through a "waiver" process by SPP.[9]

4.      SPP's proposal fills a gap in the Commission's pending Notice of Proposed Rulemaking on "Regional Transmission Planning and Cost Allocation and Generator Interconnection," which sets forth new rules for nearly every issue tangentially related to transmission planning but "fails to clarify the single most critical question confronting individual states and consumers:  Will unwilling states' ratepayers be required to pay for their . . . neighboring state's (or locality's) public policy goals?"[10]  The Notice of Proposed Rulemaking punted on the issue.  Here, we have an answer and new precedent: the RTO will decide based on flimsy criteria.

5.      I do not understand why the majority would allow a public utility, SPP, to arrogate to itself so much discretion to decide when a state must pay for its neighbors' parochial public policy objectives.  The SPP region covers fourteen states.  Of these, a 2018 summary prepared by the National Conference of State Legislatures identifies Arkansas,

---

[8] *See*, *e.g.*, Southwestern Electric Power Company, Public Service Company of Oklahoma, Southwestern Public Service Company, and Oklahoma Gas & Electric Company May 31, 2022 Protest at 16-18; City Utilities of Springfield, Missouri, Arkansas Electric Cooperative Corporation, Kansas City (KS) Board of Public Utilities, and Missouri Joint Municipal Electric Utility Commission September 19, 2022 Supplemental Joint Protest at 5-12.

[9] *See*, *e.g.*, City Utilities of Springfield, Missouri, Arkansas Electric Cooperative Corporation, Kansas City (KS) Board of Public Utilities, and Missouri Joint Municipal Electric Utility Commission September 19, 2022 Supplemental Joint Protest at 12-13.

[10] *See Building for the Future Through Elec. Reg'l Transmission Planning & Cost Allocation & Generator Interconnection*, 179 FERC ¶ 61,028 (2022) (Danly, Comm'r, dissenting at P 9).

Louisiana, Nebraska, and Wyoming as not having any renewable portfolio standards.[11] Iowa, Kansas, Missouri, Montana, North Dakota, Oklahoma, and South Dakota had renewable portfolio standards, but they have expired or the requirement due date has passed.[12]  That totals eleven of the fourteen states, yet SPP's proposal permits it to spread the costs of transmission for renewables across the region.  Today's order cites record evidence that "SPP's Regional State Committee approved both the initial proposal in Docket No. ER21-1676-000 and the revised proposal in the instant filing,"[13] and while that is true, the Oklahoma Corporation Commission, Louisiana Public Service Commission, New Mexico Public Regulation Commission, and the Public Utility Commission of Texas voted against it.[14]  Two other states in the SPP region apparently are not in the Regional State Committee (Montana and Wyoming), and it appears Minnesota did not participate in the vote, meaning that only 7 out of 14 states "approved" SPP's filing.[15]  This is hardly the ringing endorsement the majority trumpets,[16] but rather

---

[11] *See State Renewable Portfolio Standards & Goals*, National Conference of State Legislatures (Aug. 13, 2021), https://www.ncsl.org/research/energy/renewable-portfolio-standards.aspx.

[12] *See id.*

[13] *Southwest Power Pool, Inc.*, 181 FERC ¶ 61,076 at P 8 n.16 (citing SPP Transmittal at 4-6).

[14] *See* Southwestern Electric Power Company, Public Service Company of Oklahoma, Southwestern Public Service Company, and Oklahoma Gas & Electric Company May 31, 2022 Protest at 18.  Interestingly, New Mexico and Texas are two of the three states in SPP that have renewable portfolio standards, the other being Minnesota.  *See State Renewable Portfolio Standards & Goals*, National Conference of State Legislatures (Aug. 13, 2021), https://www.ncsl.org/research/energy/renewable-portfolio-standards.aspx.

[15] *See Regional State Committee*, Southwest Power Pool (last visited Oct. 28, 2022), https://www.spp.org/stakeholder-groups/organizational-groups/regional-state-committee/; *see also* RSC Meeting Minutes, dated January 24, 2022 (RSC Minutes), https://www.spp.org/documents/66516/regional%20state%20committee%20business%20meeting%20minutes%202022%2001%2024%20.pdf) (showing meeting participants).

[16] *Southwest Power Pool, Inc.*, 181 FERC ¶ 61,076 at P 49.

confirms that SPP's proposal "merely pits some states against others,"[17] leaving SPP as the referee.

6.    Only one state filed comments in this proceeding, the Kansas Corporation Commission, arguing that "SPP's Sunflower and Midwest pricing Zones, which are located in Kansas, are two of the three Zones that have been disproportionately impacted by the influx of renewable wind generation" and "cost allocation in SPP leaves customers in the host Zone paying a disproportionate share of the costs for the new or upgraded transmission that is used for exports."[18]  The Kansas Corporation Commission therefore supports SPP's proposal to spread the costs of this transmission to other states.[19]  I wish we had heard from these other states in this proceeding, especially with no less important an issue than transmission cost allocation at stake.  Aside from the relatively few comments and protests in the record, we know only that SPP's proposal failed to be approved by SPP stakeholders.[20]  Regardless how thin the record before us, SPP should not be in the position of deciding to pass one state's costs on to another.

7.    I know that cost allocation is hard.  I recognize that the Commission has done little to provide clear guidance on the role of the states in the face of conflicting public policy goals.  I also appreciate SPP's efforts to formulate a section 205 proposal to proactively address the issue rather than waiting for the Commission to mandate a particular approach.  But SPP's proposal is unjust and unreasonable.

        For these reasons, I respectfully dissent.


_____
James P. Danly
Commissioner

_____

        [17] Southwestern Electric Power Company, Public Service Company of Oklahoma, Southwestern Public Service Company, and Oklahoma Gas & Electric Company May 31, 2022 Protest at 18 (initial capitalization omitted).

        [18] *See* Kansas Corporation Commission June 7, 2022 Comments at 3.

        [19] *Id.*, *passim*.

        [20] *See* Southwestern Electric Power Company, Public Service Company of Oklahoma, Southwestern Public Service Company, and Oklahoma Gas & Electric Company May 31, 2022 Protest at 18.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                                    Docket No.  ER22-1846-001

(Issued October 28, 2022)

CHRISTIE, Commissioner, *dissenting*:

1.      Earlier this year Midcontinent Independent System Operator, Inc. (MISO) proposed to modify its cost allocation method for Multi-Value Projects (MVPs) to allow the costs of new MVP portfolios to be allocated on a subregional basis, which permitted a "postage stamp" cost allocation in MISO Midwest for its upcoming tranche of transmission projects.[1]  Several protestors objected to such a full socialization of costs across all of MISO Midwest (MISO South was excluded), and I also expressed my concern about the use of the postage stamp method.[2]  Ultimately, I concurred in approving the MISO filing because of the robust involvement in its development, and formal endorsement of the proposal, by the Organization of MISO States, Inc. (OMS),[3] all of which was documented in the record.  I also noted that not a single OMS state opposed the proposal.[4]

2.      Herein, SPP proposes a fundamental change to the "Highway/Byway" cost allocation methodology that has been used in SPP for well over a decade.[5]  The states in SPP played a major role in the original development of this methodology, acting through the SPP Regional State Committee (RSC).[6]  The RSC and the "Highway/Byway"

---

[1] *Midcontinent Indep. Sys. Operator, Inc.*, 179 FERC ¶ 61,124 (2022).

[2] *Id.* (Christie, Comm'r, concurring at P 3), https://www.ferc.gov/news-events/news/commissioner-christies-concurrence-concerning-miso-subregional-cost-allocation.

[3] *Id.* PP 3-4.

[4] *Id.* P 4 n.5.

[5] *E.g.*, *Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076, at P 5, 9-10 (2022) (Order).

[6] *E.g.*, *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252, at P 21 (2010), *reh'g denied*, 137 FERC ¶ 61,075 (2011) ("SPP states that a region-wide approach focuses on the development of a robust transmission system that is required to take into account not only reliability issues, but economic opportunities to reduce congestion, as well as state and federal policy goals such as increased use of renewable energy resources, greater

methodology have been hallmarks of the exceptionally strong role that the states have played in cost allocation in SPP for many years.  Notably, the "Highway/Byway" methodology, by definition, has from its very inception been used to cost-allocate projects that are designed to fulfill state public policies,[7] and the states in SPP have accepted this methodology as a fair compromise formula to use in allocating the costs of such policy-driven projects.  Thus, it is absolutely essential that any fundamental change to this cost-allocation methodology — one that would shift costs to consumers in different states — represents a strong consensus, clearly expressed, among the SPP states.

3.      Such a strong consensus is not evident on this record.  In contrast to OMS in the MISO case noted above, the RSC did not file comments in this record in support of SPP's proposal.  Further, only one state commission, the Kansas Corporation Commission, filed comments in the proceeding to support the proposal.  SPP provides in its filing a web link to Minutes of a January 24, 2022 RSC meeting, which reflect that the proposal was discussed and approved by those participating in that meeting;[8] however, the RSC Minutes clearly indicate that only a portion of the state commissions participating in that meeting "approved" SPP's proposal.  Specifically, the RSC Minutes explicitly indicate that *four* of the 11 state commissions participating in the January 24, 2022 RSC meeting opposed the proposal.[9]  Indeed, Commissioner Will McAdams of the Public Utility Commission of Texas provided comments to be included in the RSC Minutes expressing

---

incorporation of demand response and energy efficiency technologies, and reduced carbon dioxide emissions.  SPP states that the RSC was guided by these policies and principles of transmission system planning in developing the Highway/Byway Methodology."); *id.* P 22 ("SPP asserts that in adopting the Highway/Byway Methodology, the RSC recognized the necessity of coupling a comprehensive regional transmission planning process with regional cost allocation that appropriately reflects the benefits and costs of new transmission facilities."); *see also id.* P 8 ("Pursuant to the SPP Bylaws, the RSC has the primary responsibility for determining regional proposals regarding, among other things, 'whether license plate or postage stamp rates will be used for the regional access charge.'") (quoting *Sw. Power Pool, Inc.*, 106 FERC ¶ 61,110, at P 219 (2004)).

[7] *See, e.g.*, *id.* PP 21-22.

[8] SPP Transmittal at 6 (citing RSC Meeting Minutes, dated January 24, 2022, at page 2 (RSC Minutes), https://www.spp.org/documents/66516/regional%20state%20committee%20business%20meeting%20minutes%202022%2001%2024%20.pdf).

[9] RSC Minutes at 2; *see also* Indicated Transmission Owners Protest at 18-19. The states opposing the SPP proposal were Oklahoma, Louisiana, New Mexico, and Texas.

opposition, arguing that, *inter alia*, "this policy will shift more costs to Texas customers without any benefits."

4.      Commissioner McAdams's comments echo concerns I have previously expressed regarding any proposals to change fundamentally the "Highway/Byway" methodology that has long been used, if the effect would be to shift costs to *unwilling states*.  As SPP acknowledges in its filing, in my concurrence to the 2021 Commission order rejecting SPP's original iteration of its proposal, I stated that "it would be helpful and relevant to know whether any such waiver process ensures that states and [load serving entities] whose consumers would be re-designated as 'beneficiaries' have an opportunity to review *and consent/dissent affirmatively to the re-designation and to the new costs that go along with it*"[10] because "approval of a cost-allocation waiver would result in costs being re-allocated to consumers in states and to [load serving entities] that would not otherwise bear those costs under SPP's existing Highway/Byway methodology."[11]  I had hoped that SPP would amend its original proposal in such a way as to achieve a consensus in the RSC on a waiver process or, alternatively, provide a mechanism for states to consent to bear the costs of individual waiver projects, but SPP's instant filing does neither and thus does not adequately address my concerns, nor apparently, those of several SPP states.

5.      The Order does note that under SPP's proposal the RSC may vote to recommend approval or denial of the cost allocation waiver request for an individual project and will provide such recommendation to the SPP Board and Members Committee.[12]  But this provision has no teeth.  Even if the RSC were to recommend denying a waiver request of the longstanding Highway/Byway cost allocation methodology for a costly project, the SPP Board could approve it anyway, despite the states' opposition, with the result that consumers in unwilling states would be forced to bear the costs of another state's public policies.  Such a result could not only produce rates that are unjust and unreasonable, but would fly in the face of the principle that has distinguished the "Highway/Byway" methodology since the beginning; the states developed it, the states have been willing to live with it for more than a decade, and the states must clearly consent to any changes to

---

[10] SPP Transmittal at 6 (citing *Sw. Power Pool, Inc.*, 175 FERC ¶ 61,198 (2021) (Christie, Comm'r, concurring at P 2 (Christie Concurrence) (emphasis added)), https://www.ferc.gov/news-events/news/commissioner-mark-christie-concurrence-regarding-southwest-power-pool-inc).

[11] Christie Concurrence at P 2.

[12] Order, 181 FERC ¶ 61,076 at P 10.

the long agreed-upon methodology that re-allocate costs of policy-driven projects to their consumers.[13]

       For these reasons, I respectfully dissent.


_____

Mark C. Christie
Commissioner

_____

[13] To avoid potential legal attack on this proposal, SPP could amend it to require such state consent.

**ATTACHMENT B**

181 FERC ¶ 62,211
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                                  Docket No.  ER22-1846-003

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(December 29, 2022)

Rehearing has been timely requested of the Commission's order issued on
October 28, 2022, in this proceeding.  *Southwest Power Pool, Inc.*, 181 FERC ¶ 61,076
(2022).  In the absence of Commission action on a request for rehearing within 30 days
from the date it is filed, the request for rehearing may be deemed to have been denied.
16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2021); *Allegheny Def. Project v. FERC*,
964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the requests for rehearing of the above-cited
order filed in this proceeding will be addressed in a future order to be issued consistent
with the requirements of such section.  As also provided in 16 U.S.C. § 825*l*(a), the
Commission may modify or set aside its above-cited order, in whole or in part, in such
manner as it shall deem proper.

Kimberly D. Bose,
Secretary.

# CERTIFICATE OF SERVICE

Pursuant to Rules 15(c) and 25(d) of the Federal Rules of Appellate Procedure, I hereby certify that, on February 24, 2023, I served a copy of the foregoing Petition for Review and Corporate Disclosure Statement by email to each party designated on the official service lists in FERC Docket No. ER22-1846 (listed in Attachment C), and to the FERC Solicitor. Upon receiving a file-stamped copy of this Petition, I will cause a paper copy of it to be mailed to:

Kimberly D. Bose, Secretary
Federal Energy Regulatory
Commission
888 First Street NE
Washington, DC 20426

Robert H. Solomon, Solicitor
Federal Energy Regulatory
Commission
888 First Street NE
Room 91-01
Washington, DC 20426
Robert.Solomon@ferc.gov

Dated: February 24, 2023

Respectfully Submitted,

*/s/ Misha Tseytlin*
Misha Tseytlin
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(608) 999-1240
misha.tseytlin@troutman.com

*Counsel for American Electric Power Service Corporation, on behalf of Southwestern Electric Power Company and Public Service Company of Oklahoma, and Xcel Energy Services Inc., on behalf of Southwestern Public Service Company*

2

**ATTACHMENT C**

**FERC** Online - Web Applications of the Federal Energy Regulatory Commission



| | | |
|---|---|---|
| FERC Online Home | **Service List for ER22-1846-000 Southwest Power Pool, Inc.** | |
| **About FERC Online** | Contacts marked ** must be postal served | |

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| Ameren Services Company | Matthew Tomc<br>Director and Assistant General<br>Ameren Corporation<br>1901 Chouteau Ave<br>MC 1310<br>St. Louis, MISSOURI 63040<br>UNITED STATES<br>mtomc@ameren.com | Denice Simpson<br>Regulatory Affairs Specialist<br>Ameren Corporation<br>1331 Pennsylvania Ave, NW<br>Suite 550 South<br>Washington, DISTRICT OF COLUMBIA 20<br>dsimpson@ameren.com |
| American Electric Power Service Corporation | Stacey Burbure<br>American Electric Power Company<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>slburbure@aep.com | LaChon Turner<br>AEP COMPANIES<br>801 Pennsylvania, Avenue, NW<br>Suite 735<br>Washington, DISTRICT OF COLUMBIA 20<br>lturner@aep.com |
| American Electric Power Service Corporation | Mary-Kate Rigney<br>301 S COLLEGE ST FL 34<br>CHARLOTTE, NORTH CAROLINA 28202<br>UNITED STATES<br>mary-kate.rigney@troutman.com | Christopher Jones<br>Partner<br>401 9TH ST NW STE 1000<br>WASHINGTON, DISTRICT OF COLUMBIA<br>chris.jones@troutman.com |
| American Electric Power Service Corporation | Stacey Burbure<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF COLUMBIA 20004<br>UNITED STATES<br>slburbure@aep.com | |
| Arkansas Electric Cooperative Corporation | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Basin Electric Power Cooperative | Jesse Halpern<br>Thompson Coburn LLP<br>1909 K St NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>jhalpern@thompsoncoburn.com | Nicole S Allen<br>Partner<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20<br>nallen@thompsoncoburn.com |
| Basin Electric Power Cooperative | | Mike Kraft<br>Basin Electric Power Cooperative<br>1717 E Interstate Ave<br>Bismarck, NORTH DAKOTA 58503<br>mkraft@bepc.com |
| Basin Electric Power Cooperative | | Matthew R Kolling<br>Senior Staff Counsel<br>Basin Electric Power Cooperative<br>1717 E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>mkolling@bepc.com |
| Basin Electric Power Cooperative | | Jeremy Voll<br>Electrical Engineer III<br>Basin Electric Power Cooperative<br>1717 E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>jvoll@bepc.com |
| City Utilities of Springfield, Missouri | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |

Other sidebar items: Log Out, Edit Registration, **Company Registration**, eFiling, eSubscription, eComment, Query Mailing List/Recipients by State, Query Service List, My Service List, My Filing List, eLibrary, **eTariff Viewer**, **Help**

Appellate Case: 23-1878    Page: 47    Date Filed: 04/11/2023   Entry ID: 5264040

| | | |
|---|---|---|
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | Patrick Smith<br>Corporate Counsel<br>Evergy, Inc.<br>818 S KANSAS AVE<br>TOPEKA, KANSAS 66612<br>UNITED STATES<br>Patrick.Smith@evergy.com | Denise M Buffington<br>Sr Dir Federal Regulatory Affa<br>Kansas City Power & Light Company<br>PO Box 418679<br>Kansas City,KANSAS 64141-9879<br>Denise.Buffington@evergy.com |
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | | James Flucke<br>Manager, Federal Regulatory Af<br>1200 Main<br>Kansas City, MISSOURI 64105<br>jim.flucke@evergy.com |
| ITC Great Plains, LLC | James Bixby<br>Counsel - Regulatory & Legisla<br>ITC Holdings Corp.<br>601 13th St NW<br>Suite 710S<br>RTS-RETURN TO SENDER<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>jbixby@itctransco.com | |
| Kansas City, Kansas Board of Public Utilities | Ashley Bond<br>Duncan & Allen LLP<br>Duncan & Allen LLP<br>1730 RHODE ISLAND AVE NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amb@duncanallen.com | Maurice L Moss<br>mmoss@bpu.com |
| Kansas City, Kansas, Board of Public Utilities | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Kansas Corporation Commission | Carly Masenthin<br>Litigation Counsel<br>Kansas Corporation Commission<br>1500 SW ARROWHEAD RD<br>TOPEKA, KANSAS 66604<br>UNITED STATES<br>c.masenthin@kcc.ks.gov | |
| Kansas Electric Power Cooperative, Inc. | Susan Cunningham<br>SVP & General Counsel<br>Kansas Electric Power Cooperative, Inc.<br>600 SW Corporate View<br>Topeka, KANSAS 66615<br>UNITED STATES<br>scunningham@kepco.org | Mark F Doljac<br>Executive Director, Regulatory<br>Kansas Electric Power Cooperative, Inc.<br>600 SW Corporate View<br>Topeka, KANSAS 66615<br>mdoljac@kepco.org |
| Kansas Electric Power Cooperative, Inc. | | Rebecca A Fowler<br>Manager Regulatory Affairs<br>600 S.W. Corporate View<br>Topeka, KANSAS 66615<br>rfowler@kepco.org |
| Midwest Energy, Inc | Richard Lorenzo<br>LOEB & LOEB<br>901 New York Ave., NW<br>Suite 300 East<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>rlorenzo@loeb.com | Nicole Ayn Travers, ESQ<br>Associate<br>LOEB & LOEB<br>900 New York Avenue NW<br>Suite 300 E<br>Washington, DISTRICT OF COLUMBIA 20<br>ntravers@loeb.com |
| Midwest Energy, Inc | William Dowling<br>V.P. Energy Mgmt<br>Midwest Energy, Inc.<br>1330 Canterbury Dr.<br>Hays, KANSAS 67601<br>UNITED STATES<br>bdowling@mwenergy.com | |
| Missouri Joint Municipal Electric Utility Commission | Heather Starnes<br>Attorney<br>Healy Law Offices, LLC<br>12 PERDIDO CIR<br>LITTLE ROCK, ARKANSAS 72211 | |

| | | |
|---|---|---|
| | UNITED STATES<br>heather@healylawoffices.com | |
| Missouri Joint Municipal Electric Utility Commission | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Oklahoma Gas & Electric Company | DeAnn Aderholt<br>Oklahoma Gas and Electric Company<br>321 N. Harvey<br>P.O. Box 321 M/C 1208<br>Oklahoma City, OKLAHOMA 73101<br>UNITED STATES<br>aderhodm@oge.com | Amanda Reyes<br>reyesar@oge.com |
| Oklahoma Gas & Electric Company | William Sultemeier<br>General Counsel and Chief Comp<br>OGE Energy Corp.<br>321 N Harvey Avenue<br>Oklahoma City, OKLAHOMA 73102<br>UNITED STATES<br>sultemwh@oge.com | |
| Public Utility Commission of Texas | Debra Roby<br>Partner<br>Jennings, Strouss & Salmon, P.L.C.<br>900 17TH ST NW STE 500-A<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>droby@washingtonenergylaw.com | Stephen D. Journeay<br>Director, Commission Advising<br>Texas Public Utility Commission<br>1701 N. Congress Ave.<br>Austin, TEXAS 78701<br>stephen.journeay@puc.texas.gov |
| Public Utility Commission of Texas | Alan Robbins<br>Partner<br>Jennings, Strouss & Salmon, P.L.C.<br>900 17TH ST NW STE 500-A<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>arobbins@washingtonenergylaw.com | |
| Public Utility Commission of Texas | Thomas Steiger<br>Associate<br>Jennings Strouss & Salmon, P.C.<br>900 17TH ST NW STE NW STE 500-A<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tsteiger@washingtonenergylaw.com | |
| Southwest Power Pool, Inc. | Justin Hinton<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72212<br>UNITED STATES<br>jhinton@spp.org | Nicole Wagner<br>Manager-Regulatory Policy<br>Southwest Power Pool Inc.<br>201 WORTHEN DR<br>LITTLE ROCK, ARKANSAS 72223<br>jwagner@spp.org |
| Southwest Power Pool, Inc. | | Michelle L Harris<br>Senior Paralegal<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223-4936<br>mharris@spp.org |
| Southwest Transmission, LLC | Christina Switzer<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>cswitzer@efenergylaw.com | Michael R Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Washington, DISTRICT OF COLUMBIA 20<br>mengleman@efenergylaw.com |
| Southwest Transmission, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Southwest Transmission, LLC | | Brenda Prokop<br>bprokop@lspower.com |
| Sunflower Electric Power Corporation | Adrienne Clair<br>Thompson Coburn LLP<br>Thompson Coburn LLP<br>1909 K ST NW STE 600 | Jecoliah R Williams<br>Associate Attorney<br>Thompson Coburn LLP<br>1909 K Street, N.W. |

| | | |
|---|---|---|
| | WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>aclair@thompsoncoburn.com | Suite 600<br>Washington, DISTRICT OF COLUMBIA 20<br>jwilliams@thompsoncoburn.com |
| Sunflower Electric<br>Power<br>Corporation | | Ala Tamimi<br>VP Transmission Planning and P<br>SUNFLOWER ELECTRIC COOP INC (KS)<br>425 S 119TH ST W<br>WICHITA, KANSAS 67203<br>atamimi@sunflower.net |
| Sunflower Electric<br>Power<br>Corporation | | Ray Bergmeier<br>rbergmeier@sunflower.net |
| The Empire<br>District Electric<br>Company | Elizabeth Whittle<br>Partner<br>Nixon Peabody LLP<br>799 9TH ST NW STE 500<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>ewhittle@nixonpeabody.com | Sarah B. Knowlton, ESQ<br>General Counsel<br>116 N MAIN ST<br>CONCORD, NEW HAMPSHIRE 03301<br>sarah.knowlton@libertyutilities.com |
| The Empire<br>District Electric<br>Company | | Aaron Doll<br>Senior Director<br>Liberty Utilities<br>602 S Joplin Avenue<br>Joplin, MISSOURI 64801<br>aaron.doll@libertyutilities.com |
| Western Area<br>Power<br>Administration | Gary Hoffman<br>Attorney<br>Western Area Power Administration<br>PO Box 281231<br>Lakewood,COLORADO 80228-8231<br>UNITED STATES<br>ghoffman@wapa.gov | Steven Sanders<br>Operations & Transmission Advi<br>Western Area Power Administration<br>2900 4th Ave North, Room 600<br>Billings, MONTANA 59102<br>sanders@wapa.gov |
| Xcel Energy<br>Services Inc. | bernard liu<br>Sr. Trans. Tariff Consultant<br>414 Nicollet Mall Fl 7<br>Minneapolis, MINNESOTA 55401<br>UNITED STATES<br>bernard.liu@xcelenergy.com | |

[Back to Query Service List]   [Back to FERCOnline]

*Title 18, U.S.C. 1001 makes it a crime for any person knowingly and willingly to make to any Agency or Department of the United States fictitious or fraudulent statements as to any matter within its jurisdiction.*

*FERC Online does not require the submission of personally identifiable Information (PII) (e.g. social security numbers, birthdates, and phone num FERC will not be responsible for any PII submitted to FERC Online, including any accidental or inadvertent submissions of PII.*

*This site contains information collections that are subject to the Paperwork Reduction Act (PRA). Among other things, the PRA requires FERC to with an estimate of the average burden of completing the information collections on this site. Comments regarding the burden estimate or any oth these forms can be sent to FERC's Information Collection Branch at DataClearance@ferc.gov.*

*In addition, you are not required to respond to any collection of information unless it displays a currently valid Office of Management and Budget ( number. FERC provides the OMB Control Numbers of the information collections on this site at www.ferc.gov/information-collections.*

For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676. Please include a c address, telephone number, and e-mail address.

Michael E. Gans
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

February 27, 2023

Ms. Charlotte H. Taylor
JONES & DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

Mr. Misha Tseytlin
TROUTMAN & PEPPER
Suite 3900
227 W. Monroe Street
Chicago, IL 60606

      RE: 23-1378 American Electric Power Service., et al v. FERC

Dear Counsel:

      We have received a petition for review of an order of the Federal Energy Regulatory Commission in the above case. We note that the filing fee for this petition has not been filed; you must forward the docketing fee of $500 to this office forthwith.

      Counsel in the case must supply the clerk with an Appearance Form. Counsel may download or fill out an Appearance Form on the "Forms" page on our web site at www.ca8.uscourts.gov.

      The petition has been filed under the number indicated. A copy of the petition is hereby served upon the respondent in accordance with Federal Rule of Appellate Procedure 15(c).

      Your attention is invited to the briefing schedule pertaining to administrative agency cases, a copy of which will be sent under separate Notice of Docket Activity. The clerk's office provides a number of practice aids and materials to assist you in preparing the record and briefs. You can download the materials from our website, the address of which is shown above. Counsel for both sides should familiarize themselves with the material and immediately confer regarding the briefing schedule and contents of the appendix.

      On June 1, 2007, the Eighth Circuit implemented the appellate version of CM/ECF. Electronic filing is now mandatory for attorneys and voluntary for pro se litigants proceeding without an attorney. Information about electronic filing can be found at the court's web site www.ca8.uscourts.gov. In order to become an authorized Eighth Circuit filer, you must register with the PACER Service Center at https://www.pacer.gov/psco/cgi-bin/cmecf/ea-regform.pl. Questions about CM/ECF may be addressed to the Clerk's office.

                           Michael E. Gans
                           Clerk of Court

Page Two
23-1378

CAH

Enclosure(s)

cc:    Mr. James C. Beh
       Ms. Kimberly D. Bose
       Ms. Jessica Cano
       Mr. Christopher Rhodes Jones
       Mr. Kevin M. LeRoy
       Mr. Timothy T. Mastrogiacomo
       Ms. Brooke M. Proto
       Ms. Mary-Kate Rigney
       Mr. Robert Harris Solomon
       Mr. Dominic D. Williams

       District Court/Agency Case Number(s):  ER22-1846-003

**Caption For Case Number: 23-1378**

American Electric Power Service Corporation; Southwestern Electric Power Company; Public Service Company of Oklahoma; Oklahoma Gas & Electric Company; Xcel Energy Services Inc.; Southwestern Public Service Company

          Petitioners

v.

Federal Energy Regulatory Commission

          Respondent

**Addresses For Case Participants:   23-1378**

Ms. Charlotte H. Taylor,
    Mr. James C. Beh,
    Ms. Brooke M. Proto
JONES & DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113

Mr. Misha Tseytlin,
    Mr. Kevin M. LeRoy
TROUTMAN & PEPPER
Suite 3900
227 W. Monroe Street
Chicago, IL  60606

Ms. Kimberly D. Bose and
    Mr. Robert Harris Solomon
FEDERAL ENERGY REGULATORY COMMISSION
Office of General Counsel
888 First Street, N.E.
Washington, DC  20426-0000

Ms. Jessica Cano
AMERICAN ELECTRIC POWER SERVICE
1 Riverside Plaza
Columbus, OH  43125

Mr. Christopher Rhodes Jones and
    Ms. Mary-Kate Rigney
TROUTMAN & PEPPER
Suite 1000
401 Ninth Street, N.W.
Washington, DC  20004-2134

Mr. Timothy T. Mastrogiacomo
XCEL ENERGY SERVICES INC.
Suite 250
701 Pennsylvania Avenue, N.W.
Washington, DC  20006

Mr. Dominic D. Williams
OGE ENERCY CORP.
P.O. Box 321
321 Harvey Avenue
Oklahoma City, OK  73102